UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM MICHAEL PISTOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-00249-DCP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 21] and Defendant's Motion for Summary

Judgment [Doc. 25]. William Michael Pistole ("Plaintiff") seeks judicial review of the decision

of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.     PROCEDURAL HISTORY

On November 22, 2016, Plaintiff filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of

disability that began on May 30, 2013 [Tr. 229–30, 245] but was subsequently amended to an

alleged onset date of July 10, 2016. [Tr. 187]. After his application was denied initially and upon

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 245, 264, 276]. A hearing was held on June 12, 2018. [Tr. 181–228]. On January 24, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 16-28]. The Appeals Council denied Plaintiff's request for review on April 7, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on June 8, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since July 10, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: status post right shoulder surgery; bilateral osteoarthritis of the hips; mild right knee osteoarthritis; severe left eye glaucoma; degenerative changes of the cervical spine; obesity; headaches; asthma; and degenerative changes of the thoracic spine. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: no more than occasional climbing of ramps and stairs, but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; must avoid all reaching above shoulder level with the right upper extremity; must avoid concentrated exposure to extreme heat, humidity, vibration, pulmonary irritants, and work place hazards; must avoid work

2

requiring binocular vision; and requires alternation between sitting and standing every 30 minutes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 10, 1966, and was 46 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 10, 2016, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 18–28].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  On review, the plaintiff "bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).  Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his

5

limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff argues first that the ALJ inappropriately evaluated the medical records and the medical opinions therein because she selectively reviewed and evaluated the medical opinions, and she erred by providing her own lay analysis of Plaintiff's medical conditions when she should have sought out additional medical examinations and opinions for that purpose. [Doc. 22 at 13]. Plaintiff also argues that the ALJ failed to adequately support her analysis of Plaintiff's subjective complaints with substantial evidence. [*Id.* at 20]. Thus, Plaintiff requests for the Court to vacate the final decision of the Commissioner and remand the matter for further administrative proceedings. [*Id.*]. The Commissioner maintains that the ALJ properly evaluated the medical opinions, that her evaluation was supported by substantial evidence, and that she properly evaluated Plaintiff's subjective complaints and correctly applied the relevant factors. [Doc. 26 at 11, 19]. Therefore, the Commissioner requests for this Court to affirm the disability decision. The Court will address both issues raised by Plaintiff in turn.

### A.    ALJ's Evaluation of the Medical Opinions and RFC Finding

Plaintiff alleges that the ALJ improperly weighed the medical opinions of record and provided a selective and flawed analysis of Plaintiff's medical conditions that was unsupported by substantial evidence. [Doc. 22 at 13]. Plaintiff claims that the ALJ "selected negative test results

6

from various types [of] exams where the findings were not material." [*Id.*]. As an example, Plaintiff points to the ALJ's reliance on a finding of "lack of joint pain" from a September 2016 cardiology appointment despite an orthopedist finding joint issues in November 2016 which Plaintiff explains was supported by imaging evidence. [*Id.* (citing [Tr. 21, 712–15, 1168–69, 1173].

Additionally, Plaintiff asserts that the ALJ "took it upon herself to state that the November 2016 MRI's lack of 'destructive disease' was pertinent to an assessment of Dr. Wilson's opinion[,]" arguing that this was an improper use of the ALJ's own lay opinion. [*Id.* (citing [Tr. 23]). Plaintiff also takes issue with the ALJ's affording of "'great weight' to a vague opinion from 2010, a notation of work restrictions from April 2013, and two poorly-explained non-examining opinions from 2017." [*Id.* (citing [Tr. 21, 26])]. Plaintiff argues that the ALJ should have sought additional consultative examinations and that, by failing to do so, her decision was flawed for being "under-informed." [*Id.*]. Therefore, Plaintiff requests for this Court to remand his case and direct the ALJ to provide a "proper explanation of how the MRI and other evidence impacted functioning during the relevant period." [*Id.*].

Plaintiff states that when evaluating opinion evidence, ALJs are to consider the factors listed at 20 C.F.R. §§ 404.1527(c), 416.927(c)—including length and nature of treatment, supportability, consistency, and specialization among other factors. [*Id.* at 14]. Further, Plaintiff states "[t]he regulations specifically note that, since non-examining sources 'have no examining or treating relationship with you, the weight [the Agency] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.'" [*Id.* (quoting 20 C.F.R. § 404.1527(c)(3))]. Plaintiff continues, "[a] conclusory assertion that an opinion is inconsistent with treatment notes is not sufficient to satisfy the requirement that the ALJ

7

provide reasons for his determination." [*Id.* (citing *Lester v. Astrue*, 3:08-CV-328, 2009 WL 2905921, at *8 (E.D. Tenn. Sept. 2, 2009))].

Plaintiff also provides that ALJs have a duty to develop the record, [*id.* (citing *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015))], and that "[t]he determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis." [*Id.* (quoting *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983))]. Furthermore, "[e]ven though an ALJ need not base his RFC findings entirely on a physician's opinion, he must nonetheless take care to avoid making a completely independent opinion, 'unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a common sense judgment about functional capacity.'" [*Id.* (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp.3d 824, 828–29 (E.D. Mich. 2017 (internal markings omitted) (collecting cases))]. Plaintiff also states that ALJs are "not qualified to interpret raw medical data in functional terms." [*Id*. at 15 (quoting *Houston v. Astrue*, No. 5:09-V-00220-J, 2010 WL 3620205, at *6 (W.D. Ky. July 20, 2010), *report and recommendation adopted*, No. 5:09CV220-J, 2010 WL 3620185 (W.D. Ky. Sept. 10, 2010)).

Plaintiff argues, "'typically, an ALJ's RFC finding must be supported by the opinion of at least one physician.' *Houston*, 2010 WL 3620205, at *6. More specifically, 'when a claimant has sufficiently placed her RFC at issue, an expert's RFC evaluation is ordinarily essential.' *Branscum*, 2019 WL 475013, at *13." [*Id.*]. Plaintiff concedes that, pursuant to 20 C.F.R. § 404.1520b, the decision to re-contact a source is left to the ALJ's discretion, but that, in any case, courts may not uphold an ALJ's decision when she has failed "to provide an accurate and logical bridge between the result." [*Id.* (quoting *Williams v. Saul*, No 3:18-CV-395-DCP, 2019 WL 6481285, at *6 (E.D. Tenn. Dec. 2, 2019))].

8

Thus, Plaintiff maintains that "the timely non-examining opinions do not provide a meaningful explanation of their opinion contrary to 20 C.F.R. § 404.1527(c)(3)[,]" meaning the ALJ had no "formal guidance" for interpreting the overall effect of the evidence on Plaintiff's functional capacity. [*Id.*]. Plaintiff also asserts that he has "sufficiently placed his RFC at issue." [*Id.*]. Plaintiff points to, among other things, the November 2016 MRI [Tr. 1173]; alleged discrepancies between the vocational expert's testimony and Plaintiff's physical limitations [Tr. 225]; and Plaintiff's physical discomfort from having to remain seated, as demonstrated at the disability hearing [Tr. 18]. [Doc. 22 at 15–16].

Finally, Plaintiff refers to Dr. Wilson's statement on January 30, 2018—notably given after the subsequent non-examining opinions—in which he stated his belief that Plaintiff had three fingers on the right hand that seemed to have "trigger finger." [*Id.* at 16 (citing [Tr. 1282])]. Then on June 15, 2018, "orthopedist Dr. Ivy confirmed decreased motion in the right thumb with decreased strength, localized tenderness and triggering in the A-1 pulley." [*Id.* (citing [Tr. 1367])]. Plaintiff explains that the ALJ did not search for subsequent visits nor order a consultative examination and that failure to do so constitutes legal error. *See* [*Id.*]. Plaintiff argues that, because the non-examining source opinions had already limited Plaintiff to frequent handling and fingering bilaterally, Plaintiff was likely even more limited in handling than what is reflected in the RFC because of the deterioration of his thumb. [*Id.* at 16–17]. Yet, as Plaintiff purports, "the jobs which the ALJ found to be available at Step Five required frequent or constant handling." [*Id.* at 17 (internal citations omitted)]. Thus, Plaintiff asserts that the ALJ issued an underdeveloped opinion and inappropriately evaluated the source opinions, requiring this Court to vacate the ALJ's decision and remand this matter. [*Id.*].

9

The Commissioner argues, and the Court agrees, that the ALJ properly evaluated the medical opinions of record and that substantial evidence supports the ultimate RFC finding. In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). [2] However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).].

It is apparent from Plaintiff's brief that—although not expressly stated—he takes issue with the ALJ not affording controlling weight to the medical opinion of Dr. Wilson, one of Plaintiff's treating physicians. When evaluating Dr. Wilson's opinion, the ALJ considered that Dr. Wilson "noted that the claimant is only able to walk or stand for 15 minutes, sit in one position for 15 minutes, he has trouble stooping and squatting, he is unable to perform work overhead, and he must work in a controlled environment and avoid respiratory irritants . . . ." [Tr. 23]. The ALJ found that

> the record as a whole does not substantiate the restrictive assessment by Dr. Wilson. In addition, these opinions appear to be based largely upon the claimant's subjective complaints. For example, Dr. Wilson's own records show mostly benign examinations. This opinion of Dr. Wilson is also not consistent with the other evidence of record, including that the bilateral hip MRI[]s did not show any destructive disease and no further visits to the hip specialist.

[*Id.*].

Given the above, the Court finds that the ALJ's evaluation includes many "good" reasons for why Dr. Wilson's opinion was undeserving of controlling weight. Not the least of which, the ALJ found that his opinion was inconsistent with the other medical evidence and with the record as a whole, and inconsistency is one of the "good reasons" that an ALJ can rely on when affording less weight to a treating medical physician's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *see also*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285–86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The

11

ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision."). In making her evaluation, the ALJ found that Dr. Wilson's opinion appeared to be "largely" based on Plaintiff's subjective complaints given that Dr. Wilson's treatment notes showed mostly "benign" findings, and Dr. Wilson's restrictive limitations were not consistent with imaging done of Plaintiff's hip showing no destructive disease. [Tr. 23]. Therefore, the Court finds that substantial evidence supports the ALJ's decision to not afford Dr. Wilson's opinion controlling weight, and the ALJ has provided good reasons for discounting the opinion.

Plaintiff also took issue with the ALJ's decision to afford "great weight" to the 2017 opinions of two non-examining State agency physicians, Dr. Carol Lemeh and Dr. Reeta Misra. At the outset, the ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii).

Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996). Still, the Commissioner provides that the ALJ is not bound by any findings made by state agency physicians, but such doctors are highly qualified doctors who are also experts in Social Security disability evaluations, and the ALJ is required to consider

12

their findings.  [*Id.* (citing 20 CFR § 404.1513a(b)(1).  "State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'"  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)).

Plaintiff argues that the State agency opinions were "poorly-explained" [Doc. 22 at 13]; however, Plaintiff points to no specific parts of the record to indicate *how* their opinions were flawed and, thus, undeserving of the weight afforded to them by the ALJ.  Drs. Lemeh and Misra both opined that Plaintiff could perform a range of light work, and the ALJ afforded them great weight because that were "generally consistent with the overall evidence."  [Tr. 26].  Thus, it is clear to the Court that the ALJ chose to afford great weight to the State agency opinions based on their consistency with the overall evidence in the record.  Furthermore, Plaintiff provides no specific reasoning as to why the opinions of Drs. Lemeh and Misra were "poorly-explained." Plaintiff only says that the ALJ "ran out the clock and issued an under-informed decision" when she should have sought additional medical examinations and opinions.  As will be discussed later, this argument is flawed because the Court does not agree with the critiques of the ALJ's analysis, and the ALJ is given considerable discretion to pursue additional consultative examinations. Thus, the Court finds that the evaluation of the State agency opinions was appropriate and substantial evidence supports the ALJ's decision to afford them great weight in some respects and little weight in others.[3]  *See* [Tr. 26]

---

[3] *See* [Tr. 26].  The ALJ gave great weight to Drs. Lemeh and Misra's opinions to the extent they opined to Plaintiff being able to perform a range of light work; however little weight was given to them as to the opined manipulative limitations.  [*Id.*].  Additionally, little weight was given to the opinion that Plaintiff was capable of "frequent reaching in any direction with the right upper extremity. . . ."  [*Id.*].

13

Plaintiff also argues against the ALJ's decision to afford great weight to the 2010 medical opinion of Dr. Hovis and "a notation of work restrictions from April 2013." The ALJ cited her reasons for doing so as follows: "[g]reat weight is given to [Dr. Hovis's] opinion, as it is consistent with the medical evidence, including the objective medical evidence." [Tr. 21]. The ALJ noted that Dr. Hovis "reported that the claimant was basically doing very well, was happy with his shoulder, was available for full duty with no restrictions but would be wise to choose a job that did not require heavy, constant overhead lifting." [*Id.*]. Despite this generally optimistic opinion from Dr. Hovis, the ALJ still found that Plaintiff could not perform any overhead reaching with his right upper extremity out of an abundance of caution. [*Id.*]. Regarding the 2013 notation, the ALJ found it to also be generally consistent with the record, but she still imposed a work restriction limiting Plaintiff to a range of light work and requiring alternation to sit or stand every 30 minutes. [*Id.* at 26]. In any case, the ALJ relied on multiple factors and opinions in making her RFC finding—not just the two cited here—, and the ALJ provided for more limiting restrictions than the 2010 opinion and 2013 notation suggested. Thus, as the Commissioner argues, "because the ALJ's RFC was more restrictive than these opinions, this amounts to harmless error at most." [Doc. 26 at 15]. The Court agrees with the Commissioner on this point, and again finds that the ALJ's evaluation of these opinions was proper and supported by substantial evidence.

Plaintiff also argues that the ALJ was obligated to develop the record further and failed to do so. The Court notes that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971)). While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon

14

which her decision rests, regardless of whether or not the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing"). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 404.1517.

Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The Court notes that the ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Still, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to develop the record fully and fairly. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). Here, the ALJ was well within her discretion to not pursue additional testing or medical opinions given the substantial evidence already in the record, including multiple medical opinions that were properly evaluated and Plaintiff's hearing testimony.

Plaintiff also asserts that the ALJ's review was flawed because she selected "negative test results from various types of [examinations] where the findings were not material." [Doc. 22 at 12]. Plaintiff has cited no authority for this assertion and the Court, in any case, finds this argument to be without merit considering the substantial evidence in the record supporting the ALJ's

15

decision and lack of procedural errors in her review. Lastly, Plaintiff argues that the ALJ erred by not including handling or fingering limitations in the final RFC finding. Plaintiff points to Dr. Wilson's January 30, 2018 findings that Plaintiff "[seemed] to have trigger fingers" [Tr. 1282] on his right hand (thumb, index and ring fingers). However, the ALJ considered the subsequent June 2018 examinations and reports from Dr. Ivy, an orthopedic doctor, and Dr. Gornisiewicz, a rheumatologist. Dr. Ivy noted that while Plaintiff exhibited decreased range of motion and strength in the right hand and right thumb trigger finger, the exam was otherwise normal and Plaintiff received an injection to only his right thumb. [Tr. 25,1365–1368]. Additionally, Dr. Gornisiewicz noted that Plaintiff could make a tight fist, did not exhibit swelling or tenderness, and displaced good range of motion over both radiocarpal joints without restriction. [Tr. 25, 1359]. Furthermore, Dr. Wilson noted on previous examinations that Plaintiff exhibited normal range of motion of the wrists and fingers. [Tr. 1185].

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at \*3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

16

Thus, the Court finds that the ALJ's evaluation of the evidence was not erroneous, and her ultimate RFC finding is supported by substantial evidence. Therefore, remand is not warranted on this issue.

### B.    ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff also argues that the ALJ improperly analyzed his subjective complaints and that the analysis is not supported by substantial evidence. Plaintiff explains that when a plaintiff's subjective complaints are being evaluated pursuant to 20 C.F.R.§ 404.1529(b)–(c), the Sixth Circuit requires the following assessment:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

[Doc. 22 at 17 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994))]. Plaintiff states that only one of the two options must be met to pass the second prong. [*Id.* (citing *Felisky*, 35 F.3d at 1039)].

Additionally, the ALJ is to consider the factors from 20 C.F.R. § 404.1529(c)(3)(i)–(vii), and Plaintiff argues that "[his] statements about his symptoms cannot be rejected solely because the medical evidence does not substantiate his claims. 20 C.F.R. §404.1529(c)(2)." [*Id.* at 18]. Plaintiff cites to SSR 16-3p and maintains:

> the Agency will not find symptoms inconsistent with the treatment record on the basis of infrequent or absent treatment without considering possible reasons therefor. SSR 16-3p provides as non-exhaustive examples, i) that a claimant may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities that aggravate his or her symptoms, ii) that a medical source may have advised the claimant that there is no further effective treatment to prescribe or recommend, and iii) that a claimant, "may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau." SSR 16-3p's plateauing example is most logically explained as accounting for the fact someone who is not writhing in pain or comatose can still

17

be disabled. Otherwise it would be duplicative of the example of a claimant whose "symptoms may not be severe enough to prompt him or her to seek treatment, or the symptoms may be relieved with over the counter medications." SSR 16-3p.

[Doc. 22 at 18].

Plaintiff takes issue with the ALJ's alleged rejection of his testimony due in part to the conservative treatment plans, reported daily activities, and normal clinical findings. [*Id.* (citing [Tr. 25])]. Plaintiff argues that "[t]he citation to conservative treatment does not take into account SSR 16-3p's example of a claimant who structured their activity to minimize symptoms." [*Id.*]. Plaintiff emphasizes that he supervises garage work as opposed to doing the work himself [Tr. 202] and the fact that he has to change or readjust body positions [Tr. 208]. Plaintiff also critiques the ALJ's characterization of his reported activities because "while the ALJ stated that Plaintiff 'goes to his three rental properties about an hour a month' (T 25), Plaintiff actually testified spending time regarding the properties and used the time suggested by the ALJ herself (an hour or less), extending it over a month instead of a week (T 189)." [*Id.* at 19]. Plaintiff also stresses that he testified "contracted parties do necessary labor and his wife collects the rent and manages the books. T 188." [*Id.*]. Additionally,

> while the ALJ stated Plaintiff may help twist off a bolt or do a task in the garage himself (T 25), Plaintiff stated that he supervised while his contracted mechanic tightened bolts, and when the ALJ asked if there was ever a time he might 'use a tool' himself to 'demonstrate something,' Plaintiff affirmed, not specificizing that he tightened bolts as opposed to something less onerous (T 203).

[*Id.*]. Lastly, Plaintiff argues "when considering the level of treatment, the ALJ did not duly account for SSR 16-3p's example of claimant who had plateaued or structured activity to avoid symptoms." [*Id.*]. Plaintiff explains that he was not working and did not work on his own cars, instead paying someone else to do it while he observed. [*Id.*]. Therefore,

18

Plaintiff requests that remand is warranted because the ALJ failed to support her subjective complaint analysis with substantial evidence. [*Id.* at 20].

As a threshold matter, a claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). *See Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (Claimant challenged the ALJ's findings that claimant's testimony about disabling pain, other symptoms and functional limitations were not supported by the objective medical evidence and were not credible) ("In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.") (quoting *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *see also Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019) ("The social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.").

In any case, "[a]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). The Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016); *see Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p. For the reasons discussed below, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints was sufficient in this case.

In the disability decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [Tr. 21]. An ALJ may consider the inconsistencies between a claimant's subjective allegations and the medical evidence—as the ALJ did here when discounting Plaintiff's allegations concerning the severity of his impairments. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record."); *see also* Social

20

Security Ruling 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence."). Moreover, and in addition to considering objective medical evidence, the ALJ must consider the following factors in assessing a claimant's credibility: (1) daily activities; (2) the location, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, received or have received for relief of pain or other symptoms; (6) any measures that are used or were used to relieve pain or other symptoms; (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *3 (citing 20 C.F.R. § 404.1529(c)). The decisions need not contain discussion and citations as to every possible factor in order to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

Here, the ALJ considered a myriad of factors in evaluating the credibility of Plaintiff's subjective complaints. For example, the ALJ extensively considered Plaintiff's reported daily activities and found that they "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [Tr. 25]. The ALJ notes that Plaintiff testified to visiting his mother daily and occasionally mowing, even though his son did most of the mowing. [*Id.*]. Plaintiff frequently visited estate sales and made purchases. [*Id.*]. Plaintiff had taken his son fishing from a dock several times, and he goes to his garage to put away tools used by another individual who works on several cars for Plaintiff. [*Id.*]. Plaintiff also stated that he occasionally would help that individual twist off a bolt or do certain car-maintenance tasks himself, that he visited his three rental properties about an hour a month, and that he was doing some walking in

21

May 2018.  [*Id.*].  The ALJ found these activities to not be "consistent with a range of light work." [*Id.*].  Thus, the ALJ clearly considered the discrepancies between the limiting effects of Plaintiff's symptoms and his daily activities.

The ALJ also considered that Plaintiff "consistently received minimal conservative treatment during the applicable period"—evidenced by medication management and minimal injective and physical therapy—and that the record of evidence generally indicated Plaintiff responded well to his medical care.  [*Id.*].  Further, the ALJ considered that "records consistently document unremarkable findings found upon testing (i.e. well-developed, normal neck exam, normal cardiovascular and respiratory findings, intact neurological findings, normal psychiatric findings, full lower extremity strength, normal muscle bulk and tone, intact coordination . . . ." [*Id.* at 25–26].  The ALJ also considered objective imaging which "has not documented any abnormalities that would limit the claimant to more than those set forth in the [RFC]."  [*Id.* at 26]. Thus, the ALJ used the medical record as part of her analysis of Plaintiff's subjective complaints, including Plaintiff's conservative treatment regime.  In addition, and fundamentally, Plaintiff's arguments do not address relevant issues of the substantial evidence test.  Specifically, it appears that Plaintiff is inviting the reweighing of the evidence in this case, but "the court will not reweigh the evidence considered by the ALJ."  *Seibert v. Comm'r of Soc. Sec.*, 2019 WL 147066 at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

The Court finds that the ALJ appropriately examined the evidence and found Plaintiff's complaints of debilitating impairment were inconsistent with the record as a whole.  *See* 20 C.F.R. § 404.1529; S.S.R. 16-3p.  The evaluation of a claimant's subjective complaints rests with the ALJ

22

and should not be disturbed absent "compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted). The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints was proper and devoid of procedural error. As well, substantial evidence in the record supports the ALJ's evaluation and final RFC finding. Accordingly, remand is unwarranted on this point, as well.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 25**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
Debra C. Poplin
United States Magistrate Judge

23